## STAKER v. INDUSTRIAL COMMISSION et al.

No. 3844.   Decided October 7, 1922.   (209 Pac. 880.)

1. MASTER AND SERVANT—INDUSTRIAL COMMISSION'S RULES PRESUMED REASONABLE AND LAWFUL.   No attack being made upon
the rules adopted by the Industrial Commission for their government in awarding compensation for hernia, the reviewing
court must assume that they are reasonable and lawful.

2. MASTER AND SERVANT—INDUSTRIAL COMMISSION'S FINDINGS ON
EVIDENCE FINAL UNDER COMPENSATION ACT.   Courts will not disturb a decision of the Industrial Commission denying compensation when supported by substantial evidence.[1]

[1] *Reteuna* v. *Ind. Com.*, 55 Utah, 258, 185 Pac. 535; *Amalgamated
Sugar Co.* v. *Ind. Com.*, 56 Utah, 80, 189 Pac. 69; *George A. Lowe
Co.* v. *Ind. Com.*, 56 Utah, 519, 190 Pac. 934; *D. & R. G. W. R. R. Co.*
v. *Ind. Com.*, 60 Utah, 95, 206 Pac. 1103.

3. MASTER AND SERVANT—EVIDENCE HELD TO WARRANT DENIAL OF COMPENSATION FOR HERNIA. Evidence *held* to warrant Industrial Commission's refusal to award compensation for hernia.

Appeal by E. L. Staker from a decision of the Industrial Commission denying him compensation for alleged injuries while in employ of the Sperry Flour Company.

The Industrial Commission's decision AFFIRMED.

*R. H. Baumunk,* of Ogden, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

CORFMAN, C. J.

This matter was brought here for review on the petition of the plaintiff, alleging that the Industrial Commission exceeded its powers and authority by refusing to award him compensation for disability occasioned by reason of an alleged accident arising out of or in the course of his employment with the defendant the Sperry Flour Company. The defendant Continental Casualty Company was the insurance carrier of the latter.

It is contended by the plaintiff that there is no substantial evidence in the record in support of the findings of the Commission or its refusal to make an award; therefore, for that reason, the Commission acted in excess of its jurisdiction by refusing to grant him any relief under our Industrial Act (Laws 1917, c. 100).

The record shows that the plaintiff first made an application for compensation to the Commission on March 2, 1922, claiming that while lifting a 140-pound sack of flour in the course of his employment with the Sperry Flour Company he had accidentally slipped and strained himself, thereby immediately sustaining a hernia on his right side, by reason of which he had become disabled. On March 22d following a hearing was had before the Commission on said application,

and on April 14th the Commission refused to make an award, basing its refusal on findings from the evidence then adduced and as follows:

"That on October 25, 1921, the applicant (plaintiff) was employed by the Sperry Flour Company of Ogden, Utah, and was lifting a 140-pound sack of flour as alleged; however, he continued to work without interruption up to the 2d day of March, 1922, on which latter date an examination of him disclosed he had a hernia on his right side.

"That there was no descent of the hernia immediately after the applicant alleges he slipped.

"That the hernia did not result from the accident alleged."

On May 8, 1922, upon the petition of the plaintiff, a rehearing was granted by the Commission on said application, and, after the taking of further testimony, the Commission confirmed its said findings of April 14th and again refused to make an award.

It seems that the Commission has adopted certain rules for their government in cases where claims are made for compensation in hernia cases, which read as follows:

"In all future hernia cases coming before the Industrial Commission of Utah for decision, the Commission will pursue the following policy in the determination as to whether or not the injured would be entitled to compensation:

"(A) Real traumatic hernia is an injury to the abdominal (belly) wall of sufficient severity to puncture or tear asunder said wall, and permit the exposure or protruding of the abdominal viscera or some part thereof. Such an injury will be compensated as a temporary total disability and as a temporary partial disability, depending upon the lessening of the injured individual's earning capacity.

"(B) All other hernias, whenever occurring or discovered, and whatsoever the cause, except as under (A), are considered to be diseases causing incapacitating conditions, or permanent partial disability, but the permanent partial disability and the causes of such are considered to be, as shown by medical facts, to have either existed from birth, to have been years in formation, or both, and are not compensable, except as hereinafter provided.

"(C) All cases (B), in which it can be proved, (1) that the immediate cause which calls attention to the presence of the hernia is a sudden effort or severe strain or blow received while in the course of employment; (2) that the descent of the hernia occurred immediately following the cause; (3) that the cause was accom-

panied or immediately followed by a severe pain in the hernial region; (4) that the above facts were of such severity that the same were noticed by the claimant and communicated immediately to one or more persons, are considered to be aggravations of previous ailments, or diseases, and will be compensated as such for time lost only to a limited extent, depending upon the nature of the proof submitted and the result of the local medical examination, but not to exceed two months."

It does not appear that the reasonableness or lawfulness of the foregoing rules is in any way assailed or questioned by the plaintiff in these or in any other proceedings. As to them, in that regard, we must therefore assume that they are both reasonable and lawful.

The evidence shows that on October 25, 1921, the plaintiff, while regularly engaged in work under his said employment, met with an accident. At that time he was receiving sacks of flour from a mill chute and loading them into a freight car by placing the sacks in tiers one above the other. While lifting a 140-pound sack of flour to one of the uppermost tiers his foot slipped. He states that he then felt "something pop" and also felt a sharp pain or sting in his right side "a little above his groin and a little to the right of the medial line." According to his own testimony, he ceased work for a few minutes only, but made no complaint to his fellow workmen right at that time nor until after his day's work had been performed, when he expressed the opinion to a fellow workman and several members of his family that he had ruptured himself. He testified that at the end of the day's work a lump appeared "half as big as an egg." He also testified that the protrusion thereafter continued to grow larger in course of time until in March, 1922, it was as big as his fist, when he, for the first time, made a formal report of the accident to the company and a claim for compensation. Meanwhile he had continued to perform his usual work, although he was troubled more or less with discomfort and pain.

The record also shows that a physician was not consulted nor any physician's examination made of his physical condition until in March, 1922. The plaintiff also testified that

prior to the time of his meeting with the accident he was in perfect health and for some years prior thereto was engaged in heavy manual labor, but that he is now, and since filing his application with the Commission for compensation has been wholly incapacitated from doing his usual work and has had to discontinue the same.

We do not deem an exhaustive statement of the evidence necessary for the purposes of this review. It must suffice to say that while the record shows conclusively that the plaintiff is suffering with hernia, the exact nature of it and the causes for it are left very much in doubt under the evidence adduced before the Commission. This court has at all times heretofore refused to disturb an award made by the Commission in cases where compensation has been granted to an applicant where there was any substantial evidence to support the findings. *Reteuna* v. *Ind. Com.*, 55 Utah, 258, 185 Pac. 535; *Amalgamated Sugar Co.* v. *Ind. Com.*, 56 Utah, 80, 189 Pac. 69; *George A. Lowe Co.* v. *Ind. Co.*, 56 Utah, 519, 190 Pac. 934; *D. & R. G. W. R. R. Co.* v. *Ind. Com.*, 60 Utah, 95, 206 Pac. 1103. No good reason can be assigned why the same rule should not apply in cases where the Commission refuses to award the applicant compensation. Our Industrial Commission is purely an administrative body. The jurisdiction of this court in matters brought before it for review are exceedingly limited by the statutes—to that of determining whether or not the Commission acted in excess of its powers and whether or not where findings are made they support the award under review. The question of determining the causes of hernia is always a difficult one, and cannot justly or properly be determined as a matter of law, but should be determined largely from scientific investigation and examination made by those schooled and skilled in the practice of the medical profession. Two physicians of good standing and reputation in their profession testified before the Commission at the hearing in this case. One of the physicians, Dr. E. M. Dumke, expressed an opinion that he had examined the plaintiff in March, 1922, and that he had direct hernia or "real traumatic hernia" as outlined or

described in rule A of the Commission as hereinbefore set forth. He also stated that that kind of a hernia would be very painful and that a person receiving such a hernia would have to discontinue his employment immediately. The other physician, Dr. Henry W. Nelson, testified that he examined the plaintiff at the same time and that he "rather thought it was an incomplete indirect hernia." He was of the opinion that it came under B of the Commission's rules. In the light of the testimony of these physicians, and in view of the undisputed fact that the plaintiff was not seriously inconvenienced nor unable to perform his customary work from October 25, 1921, to March, 1922, this court **2, 3** is not prepared to say that the plaintiff sustained the injury at the time and place claimed by him and as a result of which he is now incapacitated. To do that we would have not only to usurp the functions of an administrative body, but we would have to determine the weight of the evidence and the credibility of the witnesses who testified. Such powers are not conferred upon us as a reviewing court by our statute. Moreover, we think there is some substantial evidence in the record to sustain the Commission's findings as made by it.

The order of the Commission denying the plaintiff compensation is therefore affirmed, plaintiff to pay costs.

WEBER, GIDEON, THURMAN, and FRICK, JJ., concur.